LINDA PEREIRA & others[1] vs. SECRETARY OF THE
COMMONWEALTH & others.[2]

No. 90-P-1188.

Bristol. October 2, 1990. - November 9, 1990.

Present: WARNER, C.J., PERRETTA, & KASS, JJ.

*Elections*, Primary. *County*, Commissioners.

The Secretary of the Commonwealth, purporting to act under provisions of
G. L. c. 54, § 158, that no more than one of the county commissioners
in any county shall be chosen from the same city or town, could not
properly exclude from the general election ballot the name of the candi-
date who received the highest number of votes in the primary election
for her party's nomination for a full four-year term as county commis-
sioner, in circumstances where a candidate from the same city had re-
ceived a higher number of votes in the primary election for that party's
nomination for the remaining portion of an unexpired term as county
commissioner. [501-503]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 28, 1990.

A motion for preliminary injunctive relief was heard by
*George N. Hurd, Jr.*, J.

*Eric J. Mogilnicki*, Assistant Attorney General, for Secre-
tary of the Commonwealth.

*Evans J. Carter* for Arthur Machado.

*Joseph P. Hannon* for Leonard Gonsalves.

*Armand Fernandes, Jr.* (*Kevin J. Finnerty* with him) for
the plaintiffs.

PERRETTA, J. Four names appeared on the Democratic pri-
mary election ballot for the office of Bristol county commis-
sioner, which is for a term of four years. Of these candidates,
three were from Fall River, including the plaintiff Pereira.

---

[1] Ten persons qualified to vote in the 1990 primary and general elections.
[2] Arthur Machado and Leonard Gonsalves.

The fourth, the defendant Gonsalves, was of Dartmouth. Because of the resignation of a commissioner who had served only two of the four years of a term, there was another contest for county commissioner on the ballot for the remainder of the term created by that vacancy. There were two candidates for that office, the defendant Machado of Fall River and his opponent from Taunton. Machado bested his opponent in the two-year term race, and Pereira prevailed over her three rivals for the full term position. The total number of votes received by Pereira, however, did not exceed those collected by Machado. Because both Pereira and Machado were from Fall River, they could not serve together as commissioners if elected in November. See G. L. c. 54, § 158. Consequently, the defendant Secretary advised Pereira that, as Machado had received more votes than she, albeit in a different contest and with only one, as opposed to three opponents, her name would not appear on the ballots for the general election. Rather, Gonsalves and Machado would be the Democratic nominees for the four-year and two-year term offices.[3]

On Pereira's complaint seeking declaratory and injunctive relief, a Superior Court judge issued a preliminary injunction enjoining the Secretary from "issuing ballots for the election to the office of Bristol County Commissioner four year term for the general election" unless the ballots included the name of Pereira "as the Democratic nominee for said office." The Secretary sought relief from, or reversal of, that injunctive order under G. L. c. 231, § 118. Because of the time period involved, we proceeded under the second paragraph of § 118 on an expedited schedule.[4] After oral argument on the Secretary's appeal on October 2, 1990, we affirmed the order

---

[3]Machado received 34,433 votes, Pereira 21,125, and Gonsalves 18,216.

[4]As represented in an affidavit presented by the Secretary in opposing injunctive relief, the Commonwealth would be liable for delay costs under its contract for the printing of the ballots in the amount of $9,289 a day, commencing 5:00 P.M., October 2, 1990, until the printing of the ballots was authorized. Further, if the printing was not authorized by October 5, the timely delivery of absentee ballots could not be assured.

granting injunctive relief and stated that an opinion setting forth the reasons for our decision would follow in due course.

As here pertinent, G. L. c. 54, § 158, reads:

"Not more than one of the county commissioners shall be chosen from the same city or town. If two persons residing in the same city or town shall appear to have been chosen to said offices, only the person receiving the larger number of votes shall be declared elected; but if they shall receive an equal number of votes, no person shall be declared elected. If a person residing in a city or town where a county commissioner who is to remain in office also resides, shall appear to have been chosen, he shall not be declared elected. If the person is not declared elected by reason of the above provisions, the person receiving the next highest number of votes for the office, and who resides in another city or town, shall be declared elected."

In proposing to apply § 158 to the results of this primary election, the Secretary relied upon *Thacher* v. *Secretary of the Commonwealth*, 250 Mass. 188 (1924). That case involved the results of the primary election as they pertained to the Republican ballot for two positions for the office of Barnstable county commissioner. Of the four candidates seeking to be nominated for these two offices, two, Bodfish and Thacher, were from the town of Barnstable. Bodfish beat Thacher by fifty-eight votes. When the Secretary sought to place Bodfish's name on the ballots for the general election with that of the third place candidate, Benjamin F. Bourne of Bourne, Thacher petitioned for a writ of mandamus.

In concluding that Thacher was not entitled to the writ, the court relied upon that part of G. L. c. 50, § 2, which provides: "In elections, the person receiving the highest number of votes for an office shall be deemed and declared to be elected to such office; and if two or more are to be elected to the same office, the several persons, to the number to be chosen to such office, receiving the highest number of votes, shall be deemed and declared to be elected. . . ." Because both

Thacher and Bodfish were of Barnstable, they could not both "be deemed and declared to be elected." See *Thacher, supra,* at 190-191.

There is nothing in our decision, that Pereira's name be placed on the ballots for the general election, that is contrary to the reasoning in *Thacher.* It is central to both decisions that election laws be read with an eye to the legislative purpose of their enactment: "to make a reasonably consistent and harmonious body of law which should afford to qualified citizens an opportunity to cast votes efficient to express their preferences and which should have the final result of filling the offices required by law." *Id.* at 190. It is perhaps to fulfil that purpose that *Thacher* expressly limited itself "to the facts of the case at bar" and dismissed the petition "without considering the form of the remedy . . ." *Id.* at 191.

On the facts of the instant case, we concluded that bumping Pereira from the ballots for the general election did not further the purposes of giving voters the opportunity to express their preferences *and* effectively nominate only as many candidates as could be elected.[5] The voters had not been allowed to choose between Pereira and Machado. Moreover, replacing Pereira's name with that of Gonsalves to avoid the prohibition set out in c. 54, § 158, did not resolve with certainty the problem sought to be remedied. The Republican candidate on the general election ballot for the four-year term is, like Pereira and Machado, from Fall River.

We also thought it worthy to note that the injunction did not preclude the Secretary from including the name of Gonsalves on the ballots.[6] Rather, it enjoined him from excluding Pereira's name. It may well be that if the problem is not re-

---

[5]Although not readily discernible from the facts set out in *Thacher,* it appears from the record and briefs on file in that case that the Democratic party may well have not nominated a candidate for the general election for the office of Barnstable county commissioner. In those circumstances, c. 54, § 158, would have more immediacy.

[6]In this respect, *Thacher* may be somewhat similar to the present circumstances. As there noted, at 191, "[n]o contention has been made that the name of Bodfish ought not to be upon the official ballot," and all that was decided was that the law did not mandate that the Secretary also place Thacher's name on the ballot.

solved by the voters, the Secretary might then be required to take the action we thought now premature. See also G. L. c. 54, § 144. In view of the circumstances presented, however, and their difference from those which controlled *Thacher*, *supra*, we concluded that the voters should be given the first opportunity, by expressing their preference, to resolve the problem.

For these reasons we affirmed the order of the Superior Court judge.